UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

MICHAEL COLEMAN,

    Plaintiff,

v.

TARGET CORPORATION and
FIRSTFLEET, INC.,

    Defendants.

Civil Action No. 25-0487-TDC

**MEMORANDUM OPINION**

Self-represented Plaintiff Michael Coleman has filed a civil action against Defendants Target Corporation ("Target") and FirstFleet, Inc. ("FirstFleet") in which he alleges claims of defamation and slander against both Defendants arising from an episode during which Target reported that he had engaged in theft, and FirstFleet communicated that accusation to the Maryland Department of Labor, Division of Unemployment Insurance ("the Maryland Unemployment Insurance Division"). Coleman also asserts claims against FirstFleet for wrongful termination of employment in violation of public policy and for employment discrimination in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17, and the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't §§ 20–601 to 20–1203 (LexisNexis 2021). Target has filed a Motion for Summary Judgment, and FirstFleet has filed a Motion to Partially Dismiss Plaintiff's Complaint, both of which are fully briefed. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Target's Motion will be GRANTED, and FirstFleet's Motion will be GRANTED.

## BACKGROUND

As of June 2024, Coleman was employed by FirstFleet as a delivery driver. During Coleman's employment, FirstFleet had a contract with Target to deliver goods to a Target store in Silver Spring, Maryland. On June 25, 2024, Coleman drove a truck containing merchandise to this Target store and connected his truck to the Target loading dock. At approximately 10:10 a.m., Coleman exited the truck and entered the inventory storage area in the back of the Target store. Target security video footage shows that Coleman proceeded to walk through the inventory storage area, stop at a shelf, leave the area with a small orange box under his arm, and walk into the employee restroom. Coleman then left the employee restroom, exited the building, and left Target's premises. In the security video footage, no orange box is visible on Coleman's person after he left the employee restroom.

A few minutes later, Martha Duran, a Target employee, entered that same employee bathroom and saw an empty orange Gillette razor box in the trash can. Duran took a photograph of the box and provided it to Gayan Abeysinghe, an Executive Team Lead of Asset Protection for Target. In reviewing Target's security video footage from the morning of June 25, 2024, Abeysinghe observed Coleman's movements as described above and saw that Duran entered the employee restroom approximately five minutes after Coleman left it, before anyone else either entered or exited the restroom. Abeysinghe also visited the shelf area at which Coleman was seen and determined that it contained orange Gillette razor boxes that matched the one found in the bathroom trash can. After he alerted his supervisor of his findings, and his supervisor reviewed the security video footage, they completed and sent a Contract Service Provider Removal Request Form to FirstFleet in which they stated that Coleman would no longer be permitted to service any Target locations. When FirstFleet informed Coleman of the allegation of theft, he denied it and

provided FirstFleet with receipts showing purchases of other items from Target on other dates and a receipt for a purchase from a different store on June 25, 2024. Nevertheless, FirstFleet terminated Coleman's employment. When Coleman applied for unemployment benefits, FirstFleet communicated the reason for Coleman's termination to the Maryland Unemployment Insurance Division.

On January 13, 2025, Coleman filed the present Complaint in the Circuit Court of Prince George's County, Maryland in which he alleges claims of defamation and slander against both Defendants and claims against FirstFleet for a wrongful termination in violation of public policy, in violation of Maryland law, and employment discrimination, in violation of Title VII and the MFEPA. Because slander is a form of defamation, the Court will not analyze it separately from the defamation claim. *See Publish Am., LLP v. Stern*, 84 A.3d 237, 247 n.16 (Md. Ct. Spec. App. 2014) (stating that libel and slander are "two branches of the tort of defamation," that slander typically refers to defamatory statements that are spoken, and that the "essential elements are the same" for both types of defamation claims) (quoting *Lake Shore Inv'rs v. Rite Aid Corp.*, 509 A.2d 727, 731 (Md. Ct. Spec. App. 1986)).

## DISCUSSION

### I. Target's Motion for Summary Judgment

Target has filed a Motion for Summary Judgment in which it argues that based on the security video footage and affidavits submitted, a reasonable factfinder could not find Target liable on the defamation claim against it.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

Under Maryland law, to establish a claim of defamation, a plaintiff must demonstrate that (1) "the defendant made a defamatory statement to a third person"; (2) "the statement was false"; (3) "the defendant was legally at fault in making the statement"; and (4) "the plaintiff thereby suffered harm." *Piscatelli v. Van Smith*, 35 A.3d 1140, 1147 (Md. 2012) (quoting *Indep. Newspapers, Inc. v. Brodie*, 966 A.2d 432, 448 (Md. 2009)). Under the first element, a defamatory statement is one "which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person." *Id.* (quoting *Brodie*, 966 A.2d at 448). Under the second element, a statement is "false" if it was "not substantially correct." *Id.* Establishing the third element, that a defendant is legally at fault, requires a showing that the party making the false statement acted at least negligently and under certain circumstances with actual malice. *Hearst Corp. v. Hughes*, 466 A.2d 486, 490–92 (Md. 1983) (describing the different fault standards for different types of parties). For the fourth element, actual harm must generally be established, but in cases in which the statement was defamatory *per se* and was made with actual malice, harm may be presumed. *Id.* at 493; *Shapiro v. Massengill*, 661 A.2d 202, 217–18 (Md. Ct. Spec. App. 1995).

Target first argues that Coleman cannot establish defamation because in light of the submitted evidence, he cannot prove the falsity of Target's statements about his conduct. *See Piscatelli*, 35 A.3d at 1147 ("The plaintiff carries the burden to prove falsity."). Specifically, Target argues that its security video footage and employee affidavits definitively establish the truth of the statement that Coleman committed theft because the orange item seen in Coleman's possession as he went into the employee restroom was a box containing a Gillette razor and cartridges, and the empty box found in the restroom establishes that he stole the razor. In opposing the Motion, Coleman asserts that the item that he was carrying was a package of Reese's peanut butter cups that he carried with him into the store, that he went over to the shelf with the Gillette razor boxes because he heard a crash and went to put fallen bottles of shampoo back on the shelf, and that he never had the Gillette razor box in his hand. He has also submitted a receipt showing a purchase of Reese's peanut butter cups from a different store on June 25, 2024 at approximately 8:00 a.m., before the incident at Target.

Generally, a court considering a defendant's summary judgment motion may disregard a plaintiff's first-hand account only when (1) there is evidence of "undisputed authenticity" that (2) "shows some material element of the plaintiff's account to be *blatantly and demonstrably* false, (3) "such that no reasonable jury could credit the plaintiff's version of events." *Alexander v. Connor*, 105 F.4th 174, 179 (4th Cir. 2024). Upon review of the security video footage, the Court finds that although it provides strong support for Target's account, it does not meet the high standard of utterly discrediting Coleman's version of events such that no reasonable jury could believe him. Although the writing on the orange box carried by Coleman is not legible, the box appears to closely resemble the photographed orange Gillette razor box found in the restroom trash can. That item also does not appear to be a package of Reese's peanut butter cups. Nevertheless,

5

viewing the evidence in the light most favorable to Coleman, the Court does not find that the video evidence alone conclusively establishes the truthfulness of Target's statements about Coleman's conduct, both because the resolution of the security video does not allow for a positive identification of the item as a Gillette razor box, and because neither the security video footage nor the submitted affidavits can conclusively demonstrate that the Gillette razor box found in the restroom trash can was not already there before Coleman entered, or that he actually opened the box, took the razor, and discarded the box in the restroom.

However, Target also argues that the element that it was legally at fault cannot be established because its statement was protected by the common interest privilege. Maryland law recognizes certain "circumstances in which a person will not be held liable for a defamatory statement," which include when the person is acting "in furtherance of some interest of social importance, which is entitled protection." *Gohari v. Darvish*, 767 A.2d 31, 328 (Md. 2001) (quoting *Woodruff v. Trepel*, 725 A.2d 612, 617 (Md. Ct. Spec. App. 1999)). One such circumstance is when the statement is subject to "the privilege to publish to someone who shares a common interest." *Id.* at 329. A common interest may include "'interests in property, business and professional dealings,' and can 'inhere in business dealings between the publisher and the recipient.'" *Id.* (internal citations omitted). In *Gohari*, the court found that the common interest privilege applied to statements made by a Toyota franchisee to its franchisor about the qualifications of the franchisee's former employee to become another Toyota franchisee, because there was a "common interest in maintaining a candid business relationship in furtherance of the franchisee's individual success and the overall success of the franchisor." *Id.* at 330. Here, where the publisher is Target and the recipient is FirstFleet, the common interest privilege applies to their discussions about their delivery contract, including in relation to whether personnel such as

Coleman should be permitted to work on Target business pursuant to that contract, because both companies have an interest in having reliable personnel conducting the deliveries to Target. *See id.* at 329–30.

When a statement is subject to such a conditional privilege, it may be the subject of a defamation claim only if the plaintiff can demonstrate that it was made with malice, defined as "a person's actual knowledge that his or her statement is false, coupled with his or her intent to deceive another by means of that statement." *Seley-Radtke v. Hosmane*, 149 A.3d 573, 589 (Md. 2016) (quoting *Piscatelli*, 35 A.3d at 1148). In light of this requirement, "[w]hen the evidence in the record demonstrates that the defendant had a reasonable basis for believing the truth of the statement and there is no evidence impeaching the defendant's good faith, the court must enter judgment against the plaintiff." *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 318 (Md. Ct. Spec. App. 1995).

Here, the submitted evidence, particularly the security video footage and photograph of the empty Gillette razor box, demonstrates that Target did not act with malice toward Coleman. Rather, Coleman's movements throughout the store, his carrying of an object that strongly resembled a Gillette razor box into the employee restroom, his emergence without any visible sign of carrying the box, and Duran's entry into the restroom and the discovery of the empty Gillette razor box, establish that Target had a reasonable basis for believing that Coleman stole a Gillette razor box after making a delivery to Target on June 25, 2024. Indeed, Coleman does not dispute that the security videos show his movement throughout the Target store on June 25, 2024, and he cannot dispute that the item he carried into the bathroom could reasonably be deemed to be a Gillette razor box. Given this evidence, the Court finds that Coleman cannot prove that Target acted with actual knowledge that its allegations of theft were false, or that Target intended to

deceive FirstFleet with its statement. The Court will thus grant Target's Motion for Summary Judgment.

## II.    FirstFleet's Motion to Dismiss

In its Motion to Dismiss, FirstFleet seeks dismissal of Coleman's claims of defamation and wrongful termination in violation of public policy pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Coleman has failed to state plausible claims for relief.

### A.    Legal Standard

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

On a Rule 12(b)(6) motion, courts typically consider only the complaint and its attachments. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Courts are permitted to consider documents attached to a motion to dismiss "when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597,

606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). Here, in its Motion, FirstFleet references the security video footage submitted by Target. Where Coleman also references the security video evidence in the Complaint, and he does not contest the authenticity of the videos, the Court finds that it is integral to the Complaint and may consider those videos in relation to the Motion.

### B.     Defamation

Coleman asserts a claim of defamation against FirstFleet based on FirstFleet's communication to the Maryland Unemployment Insurance Division reporting Target's allegation of theft as the reason for Coleman's termination. To state a *prima facie* case of defamation, a plaintiff must assert facts showing that (1) the defendant made a defamatory statement to a third person; (2) the statement was false; (3) the defendant was legally at fault in making the statement; and (4) the plaintiff thereby suffered harm. *Gohari*, 767 A.2d at 327.

FirstFleet initially argues that Coleman fails to allege that FirstFleet made a defamatory statement to a third person because the exact words, date, and method of FirstFleet's communication to the Maryland Unemployment Insurance Division are unspecified in the Complaint. Construing the self-represented Complaint liberally, the Court does not find that this lack of specificity provides a basis for dismissal.

FirstFleet, however, also argues that Coleman has not pleaded sufficient facts demonstrating that FirstFleet was legally at fault in making a statement to the Maryland Unemployment Insurance Division. More specifically, FirstFleet asserts that the Complaint fails plausibly to allege legal fault because FirstFleet's statement was subject to a statutory privilege that protects certain communications made to the Maryland Unemployment Insurance Division:

> Unless a report or other written or oral communication that is made or delivered in connection with this title is false and malicious, a person may not bring an action

9

> for abusive or wrongful discharge, libel, or slander based on the report or communication from . . . an employee or an employer to the Secretary [of Labor] or Board of Appeals [of the Department of Labor] or any agent, employee, or representative of the Secretary or Board of Appeals.

Md. Code. Ann., Lab. & Empl. § 8–105 (LexisNexis 2016); *id.* § 8–101 (defining "Secretary" and "Board of Appeals"). Thus, an employer's statement to the Maryland Unemployment Insurance Division is privileged and cannot form the basis of a defamation suit unless it is both false and malicious. *Bagwell*, 665 A.2d at 305, 317 (holding that an employer's statement of the reasons for an employee's discharge to the Maryland agency formerly charged with issuing unemployment benefits was subject to the qualified privilege under this statute); *Shapiro*, 661 A.2d at 220 n.11 (same).

While a motion to dismiss "does not generally invite an analysis of potential defenses to the claims asserted in the complaint," a court may consider defenses on a Rule 12(b)(6) motion "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd., P'ship*, 213 F.3d 175, 195 (4th Cir. 2000).

Here, the Complaint specifically alleges that the defamation claim against FirstFleet is based on its communication to the Maryland Unemployment Insurance Division about the reason for Coleman's termination, so the allegedly defamatory statement is subject to this qualified privilege, pursuant to which the statement can support a defamation claim only if it both false and malicious. Upon consideration, the Complaint and materials integral to it do not support a plausible claim that the statement was both false and malicious.

First, as to falsity, Coleman does not allege facts showing that FirstFleet affirmatively reached out to the Maryland Unemployment Insurance Division to assert that he had engaged in theft, as opposed to responding to an inquiry from the Division by stating that it terminated Coleman because Target had accused him of theft, the latter of which would have been a true

statement. When an employee files a claim for unemployment insurance benefits, the Division requests that the employer complete a separation notice that includes, among other information, the reason for the employee's separation from employment. *See* Md. Code Regs. 09.32.02.05 (West 2025). Where the Complaint acknowledges that Target informed FirstFleet that it had concluded that Coleman should no longer conduct deliveries to Target because of the alleged theft, and FirstFleet informed Coleman that he was being terminated based on the Target report and that the Target "contract is to[o] important," Compl. at 2, ECF No. 8, Coleman has not asserted facts showing that FirstFleet conveyed any information other than that it terminated Coleman because of Target's accusation, which is undisputedly true.

Second, even if the Complaint could be construed as alleging that FirstFleet affirmatively stated that Coleman had engaged in theft, the Complaint does not provide facts showing that FirstFleet made its statement with malice. In the context of overcoming a conditional privilege to defamation, Maryland courts define malice as "a person's actual knowledge that his or her statement is false, coupled with his or her intent to deceive another by means of that statement." *Seley-Radtke v. Hosmane*, 149 A.3d 573, 576 (Md. 2016) (quoting *Piscatelli*, 35 A.3d at 1147). Where a plaintiff makes only a general allegation of malice that is refuted by other facts in the pleadings, the plaintiff fails to state a valid clam of defamation. *Phillips v. Washington Mag., Inc.*, 472 A.2d 98, 103 (Md. Ct. Spec. App. 1984). As discussed above, the security video footage, referenced in the Complaint, provided a substantial basis to support Target's allegation that Coleman engaged in the theft. *See supra* part I. Moreover, the receipts "for items purchased recently" that Coleman provided to FirstFleet when informed of Target's accusation of theft, which were attached to the Complaint, do not show any purchase of Gillette razors or any items from Target on the date in question. Compl. at 2, 6–7. Because FirstFleet's statements to the Maryland

11

Unemployment Insurance Division are statutorily privileged, and because the Complaint does not plausibly allege that FirstFleet acted with malice in reporting the reason for Coleman's termination, the Motion to Dismiss will be granted as to Coleman's defamation claim against FirstFleet.

### C.    Wrongful Termination in Violation of Public Policy

FirstFleet also seeks dismissal of Coleman's claim of a wrongful termination in violation of public policy. "The tort of wrongful discharge is one exception to the well-established principle that an at-will employee may be discharged by his employer for any reason, or no reason at all." *Wholey v. Sears Roebuck & Co.*, 803 A.2d 482, 488 (Md. 2002). Maryland law recognizes wrongful termination claims for at-will employees whose termination "contravened some clear mandate of public policy." *Adler v. Am. Standard Corp.*, 432 A.2d 464, 473 (Md. 1981). To establish wrongful termination, "the employee must be discharged, the basis for the employee's discharge must violate some clear mandate of public policy, and there must be a nexus between the employee's conduct and the employer's decision to fire the employee." *Wholey*, 803 A.2d at 489. In considering whether a clear mandate of Maryland public policy prohibits an employee's discharge, courts are limited by two factors. First, the tort of wrongful discharge is inapplicable where the public policy sought to be vindicated already has a statutory remedy. *Id.* at 490. Second, the public policy mandate must be "reasonably discernible from prescribed constitutional or statutory mandates." *Id.* at 490–91. Based on these principles, Maryland courts have recognized the tort of wrongful discharge as applicable, for example, when an employee was terminated for filing a worker's compensation claim or for exercising a First Amendment right. *Id.* at 491–92.

Here, Coleman has not stated a valid claim of a wrongful termination in violation of public policy because he has not identified a particular public policy that was violated by his termination.

To the extent that Coleman alleges that his termination was the result of race discrimination, Title VII and the MFEPA already define statutory remedies, such that no wrongful discharge tort claim is available. *See Makovi v. Sherwin-Williams Co.*, 561 A.2d 179, 190 (Md. 1989) (holding that where Title VII and the MFEPA already set forth remedies for the unlawful sex discrimination at issue, the tort remedy of wrongful discharge was not available).

To the extent that the Complaint could be construed as alleging a violation of a public policy relating in some way to the allegedly false nature of Target's accusation of theft, Coleman has offered no basis to conclude that Maryland law recognizes such a claim. Indeed, the Court of Special Appeals of Maryland, now the Appellate Court of Maryland, has found that when a security officer was terminated for allegedly striking a patient in retaliation for biting him, there was no valid wrongful discharge claim because even if the employer was "wrong about the facts," it was "entitled to terminate an at-will employee" based on "valid economic concerns or even for foolish reasons." *Bagwell*, 665 A.2d at 312. Notably, in *Bagwell*, the court noted that an employer "has no duty to investigate allegations of employee misconduct prior to discharging the employee." *Bagwell*, 665 A.2d at 321 (concluding that there was no viable claim for a "negligent investigation" prior to terminating the security officer). Under these circumstances, the Court finds that Coleman has not stated a valid claim of a wrongful termination in violation of public policy and will grant the Motion to Dismiss as to that claim.

## CONCLUSION

For the foregoing reasons, Target's Motion for Summary Judgment will be GRANTED, and FirstFleet's Motion to Dismiss the defamation, slander, and wrongful termination claims will be GRANTED. A separate Order shall issue.

Date: November 24, 2025

THEODORE D. CHUANG
United States District Judge